Jones, J.
The following legal principles have been established by the decisions of this court: That the board of county commissioners are not liable at common law in their quasi-corporate capacity for damages resulting from negligence in the performance of their official duties; that in order to impose such liability for failure to perform official functions of this character, the state, by legislative enactment, must fix the terms and the measure of liability for official delinquencies; and, further, that statutes imposing such liability, being in derogation of the common law, are not to be extended beyond the plain meaning of their terms. Commissioners of Hamilton County v. Mighels, 7 Ohio St., 110; Commissioners of Mor *167 gan County v. The Marietta Transfer & Storage Co., 75 Ohio St., 244, and Ebert v. Commissioners of Pickaway County, 75 Ohio St., 474.
In the interpretation of a statute seeking to impose a liability against the board, where it is sought to abrogate or modify the common-law rule, the statutory terms must clearly import such intention, and, if doubtful or ambiguous, should be resolved against its imposition.
This action was predicated upon the failure of the board of county commissioners to comply with the following provisions of Section 7563, General Code (89 O. L., 358) : “They [the board of county commissioners] shall also erect or cause tó be erected, where not already done one or more guard rails on each side of every approach to a county bridge, viaduct or culvert if the approach or embankment is more than six feet high.”
It is the contention of the board of county commissioners that by virtue of the provisions of this section the county is liable for failure to erect guard rails only at points of the approach or embankment where the same is more than six feet high. The claim of counsel for defendant in error, however, is that this statute extends the liability of the county to the entire length of the approach, if any part of it is more than six feet high. But if this view should not be sustained, they further maintain that if any part of the approach or embankment is more than six feet high the county commissioners are invested with a certain discretion as to how much of the approach should be protected by guard rails, and that if there be any point in the *168 approach that is dangerous or calculated to produce injury it is the duty of the commissioners to erect guard rails at such point, and a failure to do so would render the county liable. This latter view was manifestly taken by the trial court, for in that connection it charged the jury “that if the necessities would require the entire approach to that bridge to have guard rails placed upon them in order to obviate injuries to persons lawfully using the highway at that point, why then it would be the duty of the commissioners to construct guard rails along the entire approach to the bridge.” In so charging the court erred. The duty imposed on the board by Section 7563, General Code, is absolute, not relative. It is not limited by the discretion of the board, nor is it subject to the contingency that the necessities may or may not require the erection of guard rails at particular points on the approach; nor is the duty imposed at such places as the jury may find to be dangerous or calculated to produce injury. Under the charge given, the inquiry would necessarily involve the issue, Did the board, under the circumstances, use ordinary care in its determination of the question whether or not certain portions of the approach required the erection of guard rails? There is no common-law liability for negligence in this connection. The only liability therefor is that fixed in a supplementary section, which makes the county liable for failure of the board to comply with the duties prescribed in Section 7563, General Code. And whichever of the following constructions may be adopted, this duty cannot be obviated by a de *169 fense that it is only imposed at places and under circumstances contemplated in the charge of the court.
The petition was based upon a fixed duty imposed by the section named, and contained no allegation of neglect or failure to erect guard rails at points on the approach that were dangerous or calculated to produce injury. The section must be construed so as to require the commissioners either to erect guard rails at those points only where the approach or embankment is more than six feet high, or so as to require their erection at every point along the entire approach, although the greater portion thereof may be but little higher than the level ground. The section referred to also requires protection by suitable guard rails of all perpendicular wash-banks, more than eight feet in height, along public highways. It is common knowledge that many of these approaches, embankments and wash-banks are of great extent and usually form a gradual decline which extends for considerable distance but a few inches above the level. To insist that the whole extent of these should be protected by guard rails would be reductio ad absurdum, and a grave test upon the public funds. This could not have been the legislative intent. At any rate it would be of such doubtful and ambiguous import, that under the rule stated, the doubt should'be resolved in favor of the public. It is evident from the whole scope of the statute that the legislature intended to protect only those places designated by it peculiarly as points of danger. It required the erection of guard rails *170 on county bridges, viaducts and culverts where the same were more than five feet high. It required suitable guard rails at all perpendicular wash-banks more than eight feet in height. And so when the statute imposed the duty upon the county commissioners to place guard rails on approaches or embankments more than six feet high, the legislature evidently had the intention to protect these fixed points of danger.
It is conceded by the facts in this case that the defendant in error diverged from the public highway at a point where the approach or embankment sloped to a level a foot and a half to two feet below the surface of the roadway, although there is some testimony to the effect that the roadway at this point was but little higher than the ground level.
In the view we have taken construing this section of the code, the court should have instructed the jury to return a verdict for the defendant at the conclusion of the evidence. It also erred in refusing to give the special charge requested, and in its general charge imposing a duty upon the defendant to erect guard rails at any point where it would have been dangerous or calculated to produce personal injury.
The judgments of the lower courts are reversea, and judgment in this court is rendered in favor of the plaintiff in error.

Judgments reversed.

Nichols, C. J., Newman and Johnson, JJ., concur.
Matthias and Donahue, JJ., concur in second proposition of syllabus.